**Nathan GAPPELBERG, Petitioner,**

v.

**Neely LANDRUM d/b/a The Video Station, Respondent.**

No. C–2389.

Supreme Court of Texas.

Feb. 29, 1984.

Rehearing Denied April 11, 1984.

Wilson, Berry, Jorgenson & Fugua, Rodney Gappelberg, Dallas, for petitioner.

Shank, Irwin & Conant, Charles W. Pauley, Jay Brandt and Rose M. Murphy, Dallas, for respondent.

KILGARLIN, Justice.

This case presents an issue previously undecided in Texas, or for that matter, any other American jurisdiction. Under the Uniform Commercial Code, does the seller have the right to cure a substantial defect by making a replacement of the product after the buyer has revoked acceptance?

On September 5, 1980, Petitioner, Nathan Gappelberg, purchased a large screen Advent television set from Respondent, Neely Landrum, doing business as The Video Station. Gappelberg gave as consideration for the new set $2,231.25 cash and was allowed a $1,500 credit on the trade-in of his old set. Gappelberg immediately expe-

rienced numerous and different problems with the new set. Landrum and Alpha Omega, the authorized repair agency, made several house calls in an effort to repair the set. On September 26, 1980, the set totally ceased operating. Gappelberg allowed the television set to be removed from his home, but refused offers to make further repairs on the set, saying he simply wanted his money and old set returned to him. Landrum felt he was in no position to return the old set, as he had promised it as a prize for a promotional sweepstakes, and offered Gappelberg another Advent as replacement. Gappelberg refused to accept the substitute, and brought suit against Landrum. Trial was to the court on a set of stipulated facts. The trial court rendered judgment for Landrum, and the court of appeals affirmed that judgment. 654 S.W.2d 549. Because we are of the opinion that once a buyer revokes his acceptance of a product, the right of the seller to cure either by repair or replacement is terminated, we reverse the judgments of the courts below, render judgment in part for Gappelberg, and remand this cause to the trial court for consideration of Gappelberg's attorney's fees.

The parties stipulated some fifty-seven facts, many of which have already been recited. Because of the findings and conclusions of the trial court, this case does not present difficulties usually found in revocation of acceptance cases, such as timeliness of revocation, substantiality of defect, or wear and tear from use apart from defects. The trial court found as follows:

1. Gappelberg accepted the television set *without knowledge of the defects*, which were discovered later;

2. Gappelberg revoked acceptance within a reasonable time after the defects were discovered and before any change in the condition of the set occurred not caused by such defects;

3. Gappelberg timely notified Landrum of his revocation; and

4. The television set's faulty convergence, thereby causing color shadowing around the screen's images; the constant projection of a red dot on one corner of the screen when the television set was in operation; and, the complete power failure of the set were each defects which substantially impaired the set.

The trial court nevertheless concluded that revocation of acceptance under § 2.608, Texas Business and Commerce Code Annotated (hereafter U.C.C.), was subject to a seller's right to cure under U.C.C. § 2.508. Accordingly, the trial court rendered judgment for Landrum. The court of appeals, while affirming the judgment of the trial court, concluded that a seller did not have the right to cure by repair once there had been a revocation of acceptance, but the right to cure by replacement was not precluded.

■ The concept of revocation of acceptance is relatively new. During early years of the Code, "the courts did not take to it." J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* 302 (2d ed. 1979). Early court decisions interpreting the Code confused the terms "revocation" with "rescission" and "rejection." Gradually, however, the concept of revocation of acceptance has taken hold. Its principle is simple. The right of a buyer to revoke exists only when the buyer has initially accepted the goods in question. Rejection, however, is an initial act of the buyer, meaning there was never an acceptance.

■ The right of the seller to cure by repair or replacement clearly exists in instances of rejection. U.C.C. § 2.508.[1]

---

1. § 2.508. Cure by Seller of Improper Tender or Delivery; Replacement

   (a) Where any tender or delivery by the seller is rejected because non-conforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.

   (b) Where the buyer rejects a non-conforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if

This, of course, is not a rejection case. It is a case in which, under the fact findings, the buyer was clearly entitled to revoke his acceptance. Revocation of acceptance is controlled by U.C.C. § 2.608, which reads as follows:

§ 2.608. Revocation of Acceptance in Whole or in Part

(a) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

(1) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

(2) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(b) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in the condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(c) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

██ It will be noted that paragraph (a)(2) is applicable to this case. The only reference to cure in § 2.608 is in situations when the buyer knew of the defects at the time of acceptance of the goods. There is no reference to cure for our situation where Gappelberg accepted the television set without knowing of the defects. The court of appeals, in its opinion, has listed the numerous cases from other jurisdictions which hold that once a buyer properly revokes acceptance, the seller no longer has the right to cure by repair. This is likewise the conclusion of White and Summers, *Handbook of the Law Under the Uniform Commercial Code, supra,* at 293, who

state that revocation of acceptance is not limited by the right to cure. We do not consider paragraph (c) in U.C.C. § 2.608 as having any reference to U.C.C. § 2.508. It is more logically related to U.C.C. §§ 2.603 and 2.604, as U.C.C. § 2.608(c) makes absolutely no mention of seller's rights.

In addition to those cases cited in the court of appeals' opinion which stand for the proposition that the seller's right to cure ends when the buyer's right to revoke begins, we have been cited to *Jensen v. Seigel Mobile Homes Group,* 105 Idaho 189, 668 P.2d 65 (1983), and *Linscott v. Smith,* 3 Kan.App.2d 1, 587 P.2d 1271 (1978), both of which reinforce the proposition that the right of a seller to cure exists only in instances of buyer rejection. The Kansas case even goes further and states that "the right to cure or substitute for non-conforming goods arises only upon the buyer's rejection of the goods." *Id.* at 1273. *Linscott* relied upon as authority *Bonebrake v. Cox,* 499 F.2d 951 (8th Cir. 1974). That case likewise held that the seller's right to cure under U.C.C. § 2.508 (involved was the Iowa Uniform Commercial Code) was limited to situations where non-conforming goods had been rejected by the buyer.

The court of appeals in this case notes that in none of the cases in which a seller's right to cure has been denied once revocation of acceptance occurs was the buyer presented with such a generous offer as Landrum's offer to replace. The court of appeals concluded that "in the spirit of the Code," cure by replacement even in revocation situations should be authorized.

Although a rejection case, in *Zabriskie Chevrolet, Inc. v. Smith,* 99 N.J.Super. 441, 240 A.2d 195 (1968), the court observed that "for a majority of people, the purchase of a new car is a major investment, rationalized by the peace of mind that flows from its dependability and safety. Once their faith is shaken, the vehicle loses not only its real value in their eyes,

he seasonably notifies the buyer have a further reasonable time to substitute a conform-

ing tender.

but becomes an instrument whose integrity is substantially impaired and whose operation was fraught with apprehension." In *Zabriskie,* a new 1966 Chevrolet ceased to operate within one mile of being removed from the showroom, because of a faulty transmission. The buyer was not forced to take the Chevrolet with a different transmission in it, his faith in the whole automobile having been shaken. By the same token, Gappelberg had seen one Advent television perform, or fail to perform as the case may be, and there certainly is justification for his not wanting to go through experiences with another Advent.

Professor Wallach states, "the seller is ordinarily in a better position to maximize the return on the resale of the goods, and his disposition of the goods eliminates the storage and other incidental expenses that may be involved in the unsatisfactory transaction." G. Wallach, *The Law of Sales Under the Uniform Commercial Code* 9–30 (1981). This is probably the best policy reason of all for denying replacement after revocation – – – the relative position of the parties. It is true that a new machine provided by Landrum could have proved perfectly free of defects. It is equally possible that such a new machine would have defects, perhaps similar to those of the old Advent or entirely different ones. No one contends that the seller's right to cure is limitless. Even Landrum, in argument, admits that a day of reckoning must come, although he earnestly contends that the three weeks in the situation at bar was not adequate time to allow cure.

We are cited no good policy reason why different rules should attain as to cure by replacement instead of cure by repair. Indeed, we cannot envision any basis for a distinction. Thus, we state that once a buyer has properly revoked acceptance of a product, the seller has neither the right to cure by repair nor by replacement.

There remains Gappelberg's last request, which is that he be allowed his attorney's fees. There is no real dispute as to Gappelberg's being entitled to attorney's fees under Tex.Rev.Civ.Stat.Ann. art. 2226. He has made the proper predicate.

Therefore, the judgments of the courts below are reversed and judgment is here rendered that Gappelberg recover of Landrum $3,731.25 with both pre-judgment and post-judgment interest. Further, this case is remanded for a determination by the trial court of the amount of attorney's fees to which Gappelberg is entitled for prosecution of his case in the district court of Dallas County, before the court of appeals, and before this court.